## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **CHAD HARGREAVES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 5:22-CV-00400-MTT-CHW** |
| | : | |
| **BRIAN KEMP,** *et al.*, | : | **Proceedings Under 42 U.S.C. § 1983** |
| | : | **Before the U.S. Magistrate Judge** |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

Before the Court is Defendant Tonya Myrick's Motion for Summary Judgment (Doc. 26), along with Plaintiff Chad Hargreaves' "Dispositive Motion" (Doc. 28), Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 30), and Plaintiff's "Declaration for Entry of Default" (Doc. 33). Because Plaintiff's proposed amendments would be futile, the Motion to Amend (Doc. 30) is **DENIED**. Plaintiff's "Declaration for Entry of Default" (Doc. 33) fails to state appropriate grounds for default judgment and is also **DENIED**.

Because Plaintiff cannot establish a deliberate indifference claim under the undisputed facts of this case, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 26) be **GRANTED** and that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. It is further **RECOMMENDED** that Plaintiff's "Dispositive Motion" (Doc. 28) be **DENIED**, as it fails to state any appropriate grounds for relief.

## BACKGROUND

Plaintiff filed a *pro se* civil rights complaint in the Superior Court of Bibb County against Defendants Governor Brian Kemp, former Commissioner Timothy Ward, Warden Walter Berry,

ADA Coordinator Tokema Simpson-Dumas, Grievance Coordinator Pretrillion Whipple, Nurse Tonya Myrick, and Administrator Vernon Speight. (Doc. 1-1). Plaintiff attempted to notify Defendants Governor Brian Kemp, former Commissioner Timothy Ward, Warden Walter Berry, ADA Coordinator Tokema Simpson-Dumas, Grievance Coordinator Pretrillion Whipple, and Nurse Tonya Myrick of his suit by certified mail. (*Id.* at 94-99). No Defendant waived service, and the complaint was personally served upon Defendants Kemp, Ward, and Berry. (*Id.* at 91-92; 100). Defendants Kemp, Ward, and Berry filed an answer to the complaint, as well as a notice of removal under 28 U.S.C. §§ 1441 and 1446 on behalf of all named Defendants. (Doc. 1).

Upon removal to federal court, Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915(A). (Doc. 10). The majority of Plaintiff's claims and named defendants were dismissed at screening, with only Plaintiff's Eighth Amendment claims against Defendant Myrick proceeding for further factual development. (*Id.* at 13). Plaintiff had also filed a Motion to Dismiss, Motion to Supplement the Record, and a Motion for Default Judgment. (Docs. 3; 5; 8). Plaintiff's Motion to Supplement the Record was granted, while the Motion to Dismiss and Motion for Default Judgment were denied. (Docs. 10; 14; 20).

Defendant filed a Motion for Summary Judgment on October 5, 2023. (Doc. 26). Plaintiff filed a "Dispositive Motion" on October 6, 2023, and responded to the Motion for Summary Judgment on October 31, 2023. (Docs. 28; 29). Defendant did not file a reply motion to Plaintiff's response. Plaintiff filed a Motion for Leave to File an Amended Complaint on December 12, 2023. (Doc. 30). Plaintiff filed a "Declaration for Entry of Default" on May 28, 2024, which Defendant opposed on June 11, 2024. (Docs. 33; 34).

## RELEVANT FACTS

Plaintiff was a prisoner at Baldwin State Prison during the events relevant to this case. (Doc. 10). While incarcerated at Baldwin State Prison, Plaintiff suffered from chronic, degenerative back pain. (Doc. 10 at 11-14; Doc. 26-3 ¶ 1). Beyond these facts, the parties' versions of events differ.

According to Plaintiff, on April 26, 2021, he experienced severe back pain and called the medical department. (Doc. 1-1 at 10). Two hours later, Defendant responded and informed him that no doctors were available. (*Id.*) Although Defendant told Plaintiff that she might make some phone calls after she finished pill call, she did not return to see him. (*Id.*) An hour later, Plaintiff borrowed a wheelchair and used it to go to the medical department, where he told Defendant that he was experiencing pain in his lower back that was "shooting up and down both of his legs." (*Id.* at 11). Defendant took a urine sample, after waiting an hour for Plaintiff to produce one while he continued to experience pain, and then gave Plaintiff a shot to manage his pain. (*Id.*)

On May 6, 2021, Plaintiff alleges that Defendant refused to give him his prescribed medication, Robaxin. (*Id.* at 13; Doc. 26-3 ¶ 9). Plaintiff's issues with his medication access extended beyond Defendant, as he submitted a medical request form on May 28, 2021, in which he complained that his prescription medication was not working. (Doc. 1-1 at 14). Plaintiff continued to have problems accessing his prescribed medication as well, as Plaintiff submitted an affidavit to the "medical department at Baldwin State Prison" and the former commissioner complaining that he had not been given his unspecified prescribed medication for three weeks. *Id.* Plaintiff submitted sick call forms to get his prescribed medication on December 13 and December 17, 2023. *Id.* The response to his sick call form stated that "the order was put in," but on December 21, 2023, the medical department informed him that "he would need to sign a copay first" and then

the department would order his medicine.  (*Id.* at 16).  Plaintiff submitted another sick call form on February 9, 2022, "for a refill of the prescribed medicine because the nurses had let his prescription run out again."  (*Id.* at 16).  The medical department instructed Plaintiff to get his medicine from the officers on duty, but the officers do not keep prescribed medications and do not have authority to dispense medication.  (*Id.*)  Accordingly, Plaintiff was still unable to get his medication.

Plaintiff filed an "emergency grievance" on February 28, 2022, because Defendant refused to give him his medication.  (*Id.* at 17).  On March 9, 2022, Plaintiff submitted "another sick call in to get a refill on his pain medicine because it had run [out] again."  (*Id.* at 19).  Plaintiff submitted a similar sick call form on March 15, 2022, because Defendant had "let his prescription run out" and refused to reorder it.  (*Id.*)  On March 17, 2022, a "sick call nurse" ordered his medication. (*Id.* at 18).  The next day, another member of the medical unit, Nurse Russell, told Plaintiff that his medication had been ordered on February 3, 2022.  (*Id.*)  Plaintiff believes this delay "shows that Defendant Myrick deliberately denied . . . Plaintiff . . . medication in order to cause him actual and permanent injury."  (*Id.*)  On March 21, 2022, Plaintiff submitted another sick call form because his prescription expired, and Defendant refused to reorder it.  (*Id.*)  Plaintiff submitted another sick call form on March 25, 2022, requesting a refill of his medication.  (*Id.* at 19).

According to Defendant, between April 26, 2021, and March 2022, Plaintiff received medical care twenty times at the prison.  (Doc. 26-3 ¶¶ 1-2).  Plaintiff received three epidural injections, received x-ray scans and a CT scan, consulted with an orthopedist, and had at least two sessions with pain management specialists.  (*Id.* ¶ 3).  On April 26, 2021, Defendant administered a shot of Toradol to Plaintiff for pain management and ordered that he receive an x-ray.  (*Id.* ¶ 4). On October 10, 2021, Defendant ordered a prescription of Robaxin at 750 milligrams twice a day

for thirty days to assist with pain management. (*Id.* ¶ 5). Defendant repeated the order for Robaxin on November 7, 2021, and again on January 13, 2022, along with Dr. Akwyanne. (*Id.* ¶¶ 6-7). On February 1 and February 3, 2022, Plaintiff's Robaxin prescription was discontinued as part of treatment with an outside pain specialist who prescribed a combination of Baclofen, Flexeril, and Neurontin instead. (*Id.* ¶ 8).

Plaintiff disputes many of Defendant's statements of fact.[1] Plaintiff contends that on April 26, 2021, he was left lying on the floor in his dorm in outrageous pain because Defendant refused to administer any medical assistance to him between 11:00 A.M. and 7:35 P.M. (Doc. 29-1 at 1-2). Plaintiff complained to a different nurse on April 27, 2021, about what happened the day before, and the nurse told him that there was no record of medical care on April 26, 2021. (*Id.* at 2). Regardless of what Plaintiff may have been told by the second nurse who attended to him, there is a record of Defendant providing care to him on April 26, 2021. (Doc. 26-1 at 335).[2] The record matches Plaintiff's description of events, showing that Defendant attended Plaintiff at 7:35 P.M. and noting that Plaintiff reported he had been experiencing pain since 11:00 A.M. (*Id.*) But Plaintiff's assertion that "Plaintiff had to suffer in outrageous pain from app[roximately] 11:00

---

[1] Some of Plaintiff's contentions with Defendant's citations to the record and statements of fact appear to be problems related to finding Defendant's citations within the record, potentially because of difficulty navigating the documents' numbering. For example, Plaintiff contends that the citations Defendant references to support her claim that she ordered a prescription for Robaxin on November 7, 2021, are in error, as "Attachment '1' p.1 simply states the Plaintiff's name and date of birth." (Doc. 29-1 at 4). But Defendant cites to "Attachment '1' p. 10 in her Statement of Undisputed Facts for this claim, which does indeed show a progress record noting an order for 750 milligrams of Robaxin on November 7, 2021. (Doc. 26-1 at 17). Plaintiff's substantive disagreements with Defendant's statements of fact have been addressed specifically.

[2] Doc. 26-1 consists of medical records that have been numbered by Defendant. Both parties refer to this internal numbering when citing these documents. For clarity, this Recommendation cites to the numbering on the Court's docket, which is routinely added by the Clerk when documents are electronically filed and differs from the Bates stamp numbers added by Defendant.

A.M. until 7:35 P.M. before Defendant Myrick would start to offer any medical assistance to the Plaintiff" is contradicted by Plaintiff's original claim that Defendant responded to him two hours after he called the medical unit.  (Doc. 29-1 at 1-2; Doc. 1-1 at 10).  Plaintiff further argues that Defendant never ordered an x-ray to be performed upon him on April 26.  (Doc. 29-1 at 3).  The record from April 26 does not appear to contain any reference to an x-ray, but the record from April 27 references an x-ray being scheduled for that morning.  Although the record does not show that Defendant ordered an x-ray, Defendant testifies in her affidavit that she did order one.  (Doc. 26-1 at 4).  Plaintiff also contests the records of his care on April 26 and April 27, which show that Defendant directed "that the Plaintiff should continue with routine meds."  (Doc. 29-1 at 3).  In contrast to his many claims regarding medication, Plaintiff argues that these documents support his claims because he was "never prescribed any medication for his back pain."  (*Id.*)

Plaintiff also takes issue with Defendant's assertion that she ordered his prescription of Robaxin, as he argues that Dr. Allerware ordered the medication on October 8, 2021.  (*Id.*)  On this basis, Plaintiff argues that Defendant's assertion that she ordered the medication on October 10, 2021, is incorrect.  The medical records, however, show that Defendant ordered his prescription for Robaxin on October 10, 2021, which a physician later reviewed.  (Doc. 26-1 at 18, *compare to* Doc. 26-1 at 99 (Dr. Allerware's order for Robaxin on October 8, 2021).

Plaintiff argues that the evidence that Defendant identifies as establishing that she ordered his medications at several points is incorrect, and that contrary to Defendant's claim that Baclofen and Motrin were both ordered on March 23, 2022, the record shows that on March 25, 2022, Plaintiff had been without his prescribed Baclofen and Motrin for weeks, which "verif[ies] that Defendant Myrick deliberately caused the Plaintiff to suffer outrageous pain for weeks at a time before allotting him his prescribed medication."  (Doc. 29-1 at 4).  The record does show that

Plaintiff submitted a sick call form on March 25, 2022, complaining that he had not received his prescriptions for Ibuprofen or Baclofen despite signing his co-pay. The response to the sick call form, issued the same day, states that "[i]nmates Baclofen and Motrin were ordered from the pharmacy on the evening of 3-23-22. The order would have been processed on 3-24-22. Therefore, the meds should come in this evening, 3-25-22." (Doc. 26-1 at 279).

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

Plaintiff failed to rebut Defendant's statement of undisputed material facts, triggering consequences under both the Federal Rules of Civil Procedure and this Court's Local Rules. Federal Rule of Civil Procedure 56(e)(2) provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion." Rule 56(e)(2). This Court's Local Rule 56 similarly provides: "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." MDGA Local Rule 56. Finally, Federal Rule of Civil Procedure 56(e)(3) provides that the Court may "grant summary judgment if the motion

and supporting materials—including the facts considered undisputed—show that the movant is entitled to" summary judgment. Rule 56(e)(3). *See also Urdaneta v. Wells Fargo Bank, N.A.*, 734 F. App'x 701, 704 (11th Cir. 2018). Accordingly, because Defendant properly supported her factual assertions with specific citations to the record, and because Plaintiff failed to appropriately respond to the Defendants' factual assertions pursuant to Rule 56, Defendant's facts may be accepted by the Court as undisputed. *See Williams v. Slack*, 438 F. App'x. 848, 849-850 (11th Cir. 2011) (*citing McNeil v. United States*, 508 U.S. 106, 113 (1993); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009)); (Doc. 27 (Notice to Pro Se Party of Motion for Summary Judgment)). Nevertheless, the Court has reviewed the entire record of the case. If evidence in the record shows that a fact is disputed, the Court has drawn all justifiable inferences in Plaintiff's favor for purposes of summary judgment.

## ANALYSIS

Plaintiff moves for leave to file an amended complaint, but his proposed amendments would be futile. (Doc. 30). Defendant moves for summary judgment on the basis that Plaintiff cannot establish a claim for deliberate indifference to a serious medical need in light of the undisputed facts of this case. (Doc. 26). Plaintiff has also filed a "Dispositive Motion," which fails to state any appropriate claims or requests for relief and improperly requests a jury trial. (Doc. 28). Finally, Plaintiff moves for a declaration of default against Defendant, which lacks any meritorious basis for default judgment. (Doc. 33).

*Motion for Leave to File an Amended Complaint*

Plaintiff filed a Motion for Leave to File an Amended Complaint (Doc. 30) seeking to "ad[d] more evidence" through "recently acquired . . . medical documents" and additional claims

of deliberate indifference by Defendant in May, June, October, and November of 2022.  (Doc. 30 at 1).

Because the time for filing an amendment as a matter of course under Rule 15(a)(1) of the Federal Rules of Civil Procedure had long since passed when Plaintiff filed his motion on December 12, 2023, and Defendants have not consented to the amendment, Plaintiff must seek leave of court to amend under Rule 15(c)(2).  A court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).   A district court, however, may deny leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  The decision to grant or deny leave to amend is within the sole discretion of the district court. *Laurie v. Ala. Ct. of Crim. App.*, 256 F.3d 1266, 1274 (11th Cir. 2001) (per curiam).

Plaintiff's proposed amendments would be futile, as Plaintiff's new allegations do not support a viable claim for deliberate indifference to a serious medical need, as he claims.  *See Bryant*, 252 F.3d at 1163.  The medical documents Plaintiff references in his proposed amendment are all contained within the records attached to Defendant's Motion for Summary Judgment and consist primarily of pill call logs that document the dispersal of medications at the prison and of Plaintiff's sick call forms.  (Doc. 30 at 1-4.)  Plaintiff argues that these documents show that Defendant falsified records to indicate that he refused medications on four different logs of medication administration, when he alleges those medications were actually unavailable to him during the months of May, June, October, and November 2022.  (*Id.*; *see* Doc. 26-1 at 410, 414, 431, 434).

In a sick call form from May 31, 2022, Plaintiff states that he had been "2 weeks without Triliptol and Baclofin [sic]" and that he "ask[s] the pill call nurse and [keeps] getting the same answer, 'don't know, don't care.'" (Doc. 26-1 at 267). The response to Plaintiff's sick call request, which was not issued by Defendant, explained that an appointment had been made for Plaintiff to see an upper-level provider to reorder his prescriptions. (*Id.*) The document logging Plaintiff's medication administration for the month of May 2022 includes three notations during the two weeks that Plaintiff complained he was out of medication, indicating that Plaintiff "refused" his doses of Omeprazole on May 29 and 31, and that Plaintiff's Baclofen was on hold on May 23. (Doc. 26-1 at 434). The documented refusals were not for the medications Plaintiff complained were unavailable to him, Trileptal and Baclofen. The only note regarding either of those medications stated that the prescription of Baclofen was on hold during the period that Plaintiff claimed his medication was unavailable to him. Defendant was only involved in one of the referenced medication events, specifically the refused Omeprazole on May 29, 2022. (*Id.*)

Plaintiff submitted a similar sick call form that was signed on June 3, 2022—a few days after the May 31, 2022 sick call form— and complained that it was "the 12th sick call request for Baclofin [sic] and Triliptol [sic] with still no response." (Doc. 26-1 at 263). The response to Plaintiff's sick call request, issued on June 7, 2022, repeated that an appointment had been made with an upper-level provider who would reorder Plaintiff's medications. (*Id.*) Plaintiff submitted another sick call form that was signed on June 6, 2022, and complained that it was "the thirteenth request submitted for a refill for his prescribed Baclofin,[sic] with still no response." (Doc. 26-1 at 262). The response to this sick call form was issued on June 8, 2022, and repeated that an appointment had been made with an upper-level provider who would reorder Plaintiff's medications. (*Id.*) The only logged medication administration notes from June 2022 before

Plaintiff issued his sick call forms relate to Oxcarbazepine and Omeprazole.  (*Id.* at 431).  Plaintiff's Oxcarbazepine was noted as being in transit from the pharmacy on June 1, 2, and 3;  Plaintiff was noted to refuse Oxcarbazepine on June 3; and Plaintiff was noted to refuse Omeprazole on June 1.  (*Id.*)  Defendant was the attending nurse for only two of these medication events— June 1 and 2, 2022, for doses of Oxcarbazepine which were unavailable because the medication was in transit from the pharmacy.  (*Id.*)

On October 19, 2022, Plaintiff submitted another sick call complaining that it was "the 2nd request for a refill on [his] Baclofin [sic] prescription" and that he was "completely out again as usual."  (Doc. 26-1 at 245).  The response to the sick call form, issued the same day, stated that an appointment had been made with a "ULP," which presumably stands for "upper-level provider."  (*Id.*)  The medication administration notes from the period in October 2022 before Plaintiff issued his sick call form indicate that Plaintiff refused Oxcarbazepine on October 3, 12, 17, and 18;  Plaintiff's Oxcarbazepine was on hold on October 9; Plaintiff refused ibuprofen on October 10;  Plaintiff refused Baclofen on October 3, 9, 10, 12 17, and 18; and Plaintiff's Baclofen was on hold on October 9 and 19.  (Doc. 26-1 at 414).  Of these events with Plaintiff's medication, Defendant was the administrating nurse for three—a refusal of Oxcarbazepine on October 3, 2022, and refusal of Baclofen on October 3 and October 19, 2022.  (*Id.*)

 Plaintiff submitted another sick call form on November 11, 2022, complaining that he needed to renew his Baclofen prescription.  (Doc. 26-1 at 243).  The response to the sick call form was issued on November 15, 2022, and repeated that Plaintiff had an appointment with a provider to renew his prescription.  (*Id.*)  The logged medication administration notes show that on November 4, Plaintiff's Oxcarbazepine was in transit from the pharmacy, Plaintiff was out of unit and did not receive Oxcarbazepine or Baclofen on November 8, Plaintiff refused Oxcarbazepine

on November 8 and 9, and Plaintiff refused Baclofen on November 1, 4, 8, and 9.  (Doc. 26-1 at 410.)  Defendant was the administering nurse for two of these medication incidents: the refusal of Oxcarbazepine and the refusal of Baclofen on November 8, 2022.  (*Id.*)

In sum, the records state that Plaintiff refused one of the medications, which he denies he refused and alleges was actually unavailable to him on six dates in October (October 3, 9, 10, 12, 17, and 18, 2022) and four dates in November (November 1, 4, 8, and 9, 2022).  (Doc. 26-1 at 414, 410).  Of those dates, Defendant was the administrating nurse for three: October 2 and 19, 2022, and November 8, 2022.  (*Id.*)  In none of these incidents does Plaintiff claim that he was actually denied medication, but rather that Defendant falsified the records regarding his medication refusal. Plaintiff acknowledges and references additional evidence that shows his medications were not available at the time in question.  (Doc. 30 at 3).

Plaintiff's proposed additional claim amounts to an allegation that Defendant incorrectly logged the reason that he did not receive unavailable medication on three occasions months after his complaint was filed.  As explained in the order screening Plaintiff's initial complaint, "To state a claim for deliberate indifference to serious medical needs, a plaintiff must allege '(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury.' *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citation omitted)."  (Doc. 10 at 12-13).  Although Plaintiff could meet the first component of the analysis, as he does have a serious medical need that has been diagnosed by a physician (as addressed in greater detail in the portion of the Recommendation regarding the Motion for Summary Judgment), Plaintiff cannot meet the subjective portion of the analysis or show any causation between Defendant's alleged actions and any injury.

The subjective component of deliberate indifference analysis requires three elements: (1) an official's subjective knowledge of the risk of serious harm; (2) disregard of that risk, and (3) conduct that rises above gross negligence. *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1234 (11th Cir. 2010). Liability cannot be based on simple negligence or medical malpractice, but rather must come from some sort of conscious disregard for a serious and imminent risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (explaining that mere allegations of negligence or malpractice do not amount to deliberate indifference). Even if Plaintiff is correct in his allegations that Defendant improperly logged that he refused his unavailable medication, this allegation does not indicate that Defendant did so in disregard of a serious risk of harm or that improperly logging medication on three incidents amounts to anything more than negligence or even medical malpractice, neither of which are an appropriate basis for a claim of deliberate indifference. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *see also Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976) (citations omitted) (stating that medical treatment rises to the level of an Eighth Amendment violation when the care is "'repugnant to the conscience of mankind'" or would "offend 'evolving standards of decency'").

As to causation, although Plaintiff claims that "Defendant Myrick . . . falsified a document so as to cause Plaintiff actual and permanent injury," Plaintiff does not include any description of such an injury, nor does Plaintiff attempt to explain how Defendant's allegedly incorrect logging of medication administration injured him, when the medication was never actually available. (Doc. 30 at 3). Regardless of the information that Defendant logged, Plaintiff's medication was inaccessible, and any injury suffered as a result of that inaccessibility was not caused by Defendant's actions in logging the medication as "refused." Plaintiff does not allege that there was any such injury. Further, Plaintiff does not allege that Defendant was personally responsible

for the actual delay or inaccessibility of his medication, nor could he in light of the evidence he cites as the basis for his amendment. According to the sick log call sheets that Plaintiff identifies as evidence of Defendant's fabrications, his medication was delayed as he waited for an appointment with an upper-level provider.

Plaintiff's proposed amendments, interpreted in his favor and liberally construed, do not support a viable claim for deliberate indifference as he claims, nor any other viable claim. Therefore, amendment would be futile. Accordingly, Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 30) is **DENIED.**

*Motion for Summary Judgment*

Plaintiff claims that Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Defendant moves for summary judgment on the basis that Plaintiff cannot establish a claim of deliberate indifference under the undisputed facts of this case, because (1) Plaintiff cannot establish the subjective component of deliberate indifference analysis and (2) Plaintiff has not submitted adequate medical evidence to show the detrimental effect of delay in medical treatment, as required to sustain such a deliberate indifference claim. As explained below, Defendant's arguments are correct and Plaintiff's claims are subject to dismissal.

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment, as it constitutes the unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). To establish a claim of deliberate indifference to a serious medical need, a prisoner must show (1) that he had a serious medical need, (2) that a defendant acted with deliberate indifference to that need,

and (3) that his injury was caused by the defendant's wrongful conduct. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Specifically, the prisoner must show he suffered an "objectively, sufficiently serious deprivation." *Wade v. McDade*, No. 21-14275, 2024 WL 3354963, at *7 (11th Cir. July 10, 2024).

To satisfy the objective component of deliberate indifference analysis by showing that he had a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert*, 510 F.3d at 1326. After establishing the objective component, the prisoner must also show that the defendant acted with "subjective recklessness as used in criminal law," such that the defendant "was actually, subjectively aware his own conduct caused a substantial risk of serious harm to the plaintiff." *Id. (citing Farmer v. Brennan*, 511 U.S. 825, 839, 844-845 (1994)). The subjective component requires three showings: (1) that the defendant had subjective knowledge of the risk of serious harm; (2) that the defendant disregarded that risk, and (3) that the defendant's conduct rose above gross negligence. *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1234 (11th Cir. 2010). "[M]erely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" are insufficient to establish deliberate indifference. *Palazon v. Sec'y for Dept. of Corr.*, 361 F.App'x. 88, 89 (11th Cir. 2010).

When a claim is based on delayed treatment, deliberate indifference can only be established "when 'it is apparent that delay would detrimentally exacerbate the medical problem,' it does so, and 'the delay is medically unjustified.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (explaining that mere allegations of negligence or malpractice do not amount to deliberate indifference). "[A] simple difference in medical opinion between the prison's medical staff and

the inmate as to the latter's diagnosis or course of treatment" will not support a claim for deliberate indifference. *Harris*, 841 F.2d at 1505 (citation omitted). Whether defendants "should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore does not amount to deliberate indifference under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quotation omitted) (concluding that a dispute between two medical doctors about the adequacy of medical treatment provided—not about whether treatment was provided at all—suggested only medical negligence and was no grounds for § 1983 liability).

Plaintiff's claims center on Defendant's alleged failure on numerous occasions to provide him with pain medication to manage his chronic back pain, which if left untreated was so severe that he was sometimes unable to walk unassisted. (Doc. 1-1 at 10-12). The record shows that Plaintiff's pain had been determined to require treatment by a physician, which meets the objective requirement of deliberate indifference. *See Goebert*, 510 F.3d at 1326.

As to the subjective component and the care provided by Defendant, the record shows that Plaintiff received significant medical care for his back pain. The record shows Defendant's involvement in Plaintiff's care consisted of her administration of Toradol and order of an X-ray on April 26, 2021; her ordering of Plaintiff's Robaxin prescription on October 10, 2021; her ordering of Robaxin again on November 7, 2021; and her ordering of Robaxin again on January 13, 2022, along with Dr. Akwyanne; and her ordering of Baclofen and Motrin on March 23, 2022. (Docs. 26-2 at 3; 26-¶¶ 6).

The level of care provided by Defendant between April 26, 2021 and March, 23, 2022, fails to meet the subjective standards for deliberate indifference. Rather than disregarding the risk of failing to provide medical care, Defendant provided significant medical care consisting of multiple

orders for medication, an order for x-rays, and the administration of Toradol.  (Doc. 26-3 ¶ 6).

Plaintiff attempted to challenge much of the evidence demonstrating this care by arguing that

Defendant herself did not order the X-ray or that a physician actually ordered the medications

rather than Defendant, but the record contradicts these arguments.  Even if Plaintiff's contentions

about who gave the orders for his treatment were substantiated, Defendant's personal failure to

order certain medications or X-rays would not amount to deliberate indifference.  Plaintiff does

not argue that his X-ray and medications were never ordered, only that it was someone other than

Defendant who ordered them.  Defendant was not solely responsible for providing Plaintiff's care,

and a different healthcare provider ordering medication or X-rays would not impart liability to

Defendant for deliberate indifference.  Similarly, Plaintiff's allegations that Defendant failed to

provide him with pain medication are contradicted by the record, as Plaintiff was not prescribed

any medication on May 6, 2021 (Docs. 10 at 8; 26-3 ¶ 7) and Plaintiff's remaining allegations

pertaining to his access to Robaxin on February 28, 2022; March 15, 2022; and March 21, 2022,

are flawed because he was not prescribed Robaxin at the time (Docs. 10 at 10-11; 26-3 ¶ 6-8).  The

record further shows that Plaintiff experienced frequent delays in medication due to problems

accessing prescriptions from outside providers and to delays in appointments with upper-level

providers, neither of which were Defendant's responsibility.  (Doc. 26-1 at 243, 245, 262, 263,

267).  Accordingly, while it appears that Plaintiff did struggle to obtain his medications, Plaintiff

has not shown that these struggles were a result of Defendant's actions.

The record does support Plaintiff's contention that there was some delay in treatment on

April 26, 2021.  Plaintiff's complaint initially stated that it was a two-hour delay between his

contacting the medical department, his initial contact with Defendant, and then another hour of

delay before Defendant took himself to the medical department and received care.  (Doc. 1-1 at

10-12). Plaintiff now argues, based on a medical form that states his pain began at 11:00 A.M. and that he did not receive treatment from Defendant until after 7:00 P.M., that he was denied treatment by Defendant for this entire period. (Docs. 29-1; 26-1 at 335). It is unclear from the record, and Plaintiff makes no showing that Defendant was solely responsible for providing medical care to inmates between the hours of 11:00 A.M. and 7:00 P.M. or that Defendant denied Plaintiff any care before she initially responded to him two hours after he contacted the medical department. Although it is not clear what time Plaintiff contacted the medical department, the two hour delay between contacting the medical department (which is not necessarily attributable to Defendant specifically) and the additional hour delay after Defendant spoke to Plaintiff and told him she would return after finishing pill call do not support an interpretation that Plaintiff initially reached out to the medical department at 11 A.M., when he first began experiencing pain, and was made to wait for eight hours until 7 P.M. for treatment.

While "a prison official may . . . act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, . . . the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligot v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999); *see also Harris v. Coweta County,* 21 F.3d 388, 393–94 (11th Cir.1994); *Brown v. Hughes,* 894 F.2d 1533, 1537–39 (11th Cir.1990). Plaintiff's pain management needs were chronic, rather than related to an emergent injury, as many cases involving the delay of treatment of severe pain for brief periods. *See McElligot*, 182 F.3d at 1254 (holding that summary judgment was improperly granted where defendants did not treat severe stomach pain with other concerning symptoms, which ultimately were found to be related to cancer, until the next day); *Brown v. Hughes,* 894 F.2d 1533 (11th Cir. 1990) (holding that delay of treatment for an inmate's broken foot of a few hours was a cognizable injury under the

constitution).   Further, the delay that Plaintiff experienced amounted to only an hour while Defendant went to distribute medications during pill call.  The delay was exacerbated by an apparent unavailability of doctors.  Defendant told Plaintiff that no doctors were available when she contacted him two hours after he called the medical department and told him that she might make some phone calls (presumably to try to find a doctor) after she finished pill call.  (Doc. 1-1 at 10).  Plaintiff went to find Defendant after waiting for an hour, by using a wheelchair, and Defendant told him that she had not returned to care for him because she had forgotten.  (Doc. 1-1 at 10).  At that time, Defendant asked Plaintiff questions about his pain, requested a urine sample at the request of Dr. Ekwunife, and provided Plaintiff with a shot of Tramadol for his pain after Plaintiff provided the urine sample following the additional consumption of fluids.  (Docs. 1-1 at 10; 26-1 at 335).  The cases that establish claims of deliberate indifference on the basis of a delay in pain treatment present longer delays and typically lesser justifications for the delays.   *See McElligot v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999); *see also Harris v. Coweta County,* 21 F.3d 388, 393–94 (11th Cir.1994); *Brown v. Hughes,* 894 F.2d 1533, 1537–39 (11th Cir.1990).

Delay in medical treatment constitutes deliberate indifference "when 'it is apparent that delay would detrimentally exacerbate the medical problem,' it does so, and 'the delay is medically unjustified.'"  *Harris*, 941 F.2d at 1505.  Although Defendant's forgetfulness regarding Plaintiff's pain and state may have been negligent, the delay was for a short period of time during which Defendant also attended to pill call.  There is no indication that this delay detrimentally exacerbated Plaintiff's chronic pain problems, nor does Plaintiff claim that this incident caused any additional injury beyond his pain, which Defendant treated with an injection after receiving Plaintiff's urine sample, per the doctor's instructions.   A further delay of treatment occurred while waiting for Plaintiff's urine sample at the instruction of Dr. Ekwunife, who instructed Defendant to give

Plaintiff more water to drink until he urinated. (Doc. 26-1 at 335). This delay similarly does not show deliberate indifference on the part of Defendant, who was obeying instructions from a doctor who is not included in this lawsuit.

Even if Defendant's treatment amounted to negligence or malpractice, it does not reach the level of mistreatment required for a claim of deliberate indifference. *Harris,* 941 F.2d at 1505. While Plaintiff may have wanted better treatment or quicker treatment, such disagreements with the course of treatment do not support a claim for deliberate indifference. *Id.*

Finally, even if Plaintiff had established a claim of deliberate indifference on the basis of the delay in his medical treatment, Plaintiff has not established any detrimental consequences related to the delay in his treatment through medical evidence. *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994) (requiring medical evidence to "establish the detrimental effect of delay in medical treatment"), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) ("To survive summary judgment in a case alleging deliberate indifference, a plaintiff must produce sufficient evidence of[, among other things,] causation.") (internal quotation marks omitted). The record contains no such evidence to support Plaintiff's claims.

Accordingly, there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law.

*Plaintiff's "Dispositive Motion"*

Plaintiff filed a document entitled, "Dispositive Motion," which is difficult to decipher. (Doc. 28). In it, Plaintiff alleges that his previous Motion for Default Judgment (Doc. 8) was never recognized by the Court and that he did not receive an initial requested docket sheet from the Clerk of Court but subsequently received a second requested copy. (Doc. 28 at 1-2). Plaintiff also

reiterates arguments that he raised in response to Defendant's Motion for Summary Judgment and claims that he submitted a "pre-deposition motion" in which he requested that Defendant produce documents that logged the buildings in which she performed pill call on the relevant dates and which was never answered. (*Id.* at 3-4). Finally, Plaintiff asks that the Court grant him a jury trial. (*Id.* at 4).

As an initial matter, the screening report and recommendation recommended that Plaintiff's Motion for Default Judgment (Doc. 8) be denied, and the denial was ordered by the Court on June 23, 2023. (Docs. 10; 14; 20). Plaintiff makes no specific assertions regarding the first requested copy of the docket sheet, which the Clerk of Court sent on July 3, 2023, but which Plaintiff apparently did not receive. (Doc. 21). Plaintiff's next requested docket sheet was received, and there appears to be no viable claim or request stemming from the missing docket sheet. (Doc. 22). Plaintiff does not make any specific requests or claims regarding the discovery he allegedly requested and did not receive, although based upon the description of Plaintiff's request, those documents appear to be within the record. (*See* Doc. 26-1 at 243, 245, 262, 263, 267). Plaintiff's arguments regarding the Defendant's Motion for Summary Judgment have been addressed above. Plaintiff's only remaining request in this motion is one for a jury trial. (Doc. 28 at 4). Because Defendant has shown that she is entitled to summary judgment and the motion does not raise any cognizable grounds for relief, it is **RECOMMENDED** that Plaintiff's "Dispositive Motion" (Doc. 28) be **DENIED.**

*Plaintiff's "Declaration for Entry of Default"*

Plaintiff has filed a "Declaration for Entry of Default" on the basis that Defendant failed to answer or otherwise object to Plaintiff's complaint or serve upon him any answer or defense. (Doc. 33). Plaintiff also contends that Defendant has not responded to his "Dispositive Motion,"

response to the Motion for Summary Judgment, and Motion for Leave to File an Amended complaint. (*Id.*)

Default judgment is appropriate where a party against whom "affirmative relief is sought has failed to plead or otherwise defend" against the claims raised against her.  Fed. R. Civ. P. 55. Plaintiff is mistaken in asserting that Defendant never responded appropriately to the filing of his claims against her, as Defendant waived service and filed a timely answer to Plaintiff's complaint. (Docs. 18, 19).  To the extent to which Plaintiff means to argue that he is entitled to default judgment on the basis of Defendant's failure to answer the other motions and his response to the Motion for Summary Judgment, this argument is meritless, as Defendant was not obligated to respond to these filings.   Accordingly, Plaintiff's motion entitled "Declaration for Entry of Default" (Doc. 33) is **DENIED**.

*Supplemental Jurisdiction*

In his original complaint Plaintiff raised additional state law claims that were not reviewed at screening in light of the uncertain nature of his federal claims.  (*See* Doc. 10).  While district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," district courts may exercise supplemental jurisdiction over state law claims that are "so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. §§ 1331; 1367(a).  A district court may decline to exercise this supplemental jurisdiction over a claim if it has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).  The Court should consider the interests of "judicial economy, fairness, and comity" when determining whether to exercise supplemental jurisdiction over state law claims.  *Rowe v. Cty. of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) (*citing Bagget v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997).  Both

comity and judicial economy are served when state courts are allowed the opportunity to resolve matters of state law, particularly when all federal claims are dismissed prior to trial. *Id.* at 1288.

The majority of Plaintiff's federal claims were dismissed at screening. (Doc. 10; 20). The final federal claim is recommended to be dismissed at summary judgment. Accordingly, it is further **RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, which concern defendants and issues that exceed the scope of the single federal claim that proceeded for further factual development after screening. (*See* Docs. 1-1; 10).

## CONCLUSION

Because Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 30) seeks amendments that would be futile, it is **DENIED**. Plaintiff's "Declaration for Entry of Default Judgment" (Doc. 33) does not show that Defendant is in default and is also **DENIED**. Because Plaintiff has not established a claim for deliberate difference under the undisputed facts of this case, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 26) be **GRANTED** and that Plaintiff's "Dispositive Motion" (Doc. 28) be **DENIED**. It is further **RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the presiding District Judge **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection is limited in length to **TWENTY (20) PAGES.** *See*

M.D. Ga. L.R. 7.4.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED and RECOMMENDED**, this 29th day of July, 2024.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge